## Daystrom, Inc., v. Batt

*William H. Wood*, for plaintiffs.

*Herbert B. Cohen*, Attorney General, and *Morley W. Baker*, Special Deputy Attorney General, for defendant.

RICHARDS, P. J., April 8, 1957.—Plaintiff instituted this action in mandamus seeking to compel the refund of certain moneys paid into the unemployment compen-

sation fund. Defendants filed preliminary objections which, in essence, state that plaintiff is not entitled to a refund because of failure to follow certain statutory requirements.

The Daystrom Furniture Corporation, chartered under the laws of New York, had been engaged in business in Philadelphia. As such it paid unemployment contributions into account number 99-10769. In March of 1951, this corporation was dissolved. Plaintiff, a New Jersey corporation, acquired its business and assets and continued the operation at Philadelphia. It applied for and received the experience rating of its predecessor and was assigned account number 99-12308. A rate of contribution was fixed and no appeal therefrom was lodged. Payments were made to the fund at the prescribed rate. However, in the employer's initial statement the name of the employer was given as "Daystrom Furniture-Div. of Daystrom, Inc." rather than its correct corporate name, "Daystrom, Inc."

In June of 1951, plaintiff opened another plant at Scranton. It filed an initial statement giving its correct corporate name and showing but one operation at Scranton, thus ignoring the one at Philadelphia. It was thereupon given a rate of contribution which was unappealed from, and was assigned account number 99-12400. It paid contributions under both accounts for the respective operations at the prescribed rates until 1955 when it asked the department to review the situation. The department did review the case, adjusted the rate for 1955, and granted a refund for that year. However, it refused to grant a refund for the years 1953 and 1954.

Section 4(j) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §753(j), provides:

"Where an employer maintains more than one place of employment within this Commonwealth, all of the employes at the several places of employment shall be treated, for the purposes of this act, as if employed by a single employer."

This, of course, should result in one rate of contribution, instead of two as in the present case. However, in view of the statements filed by plaintiff, exhibits "A" and "B," we fail to see any fault on the part of the department.

The section dealing with rates is section 301 (e) (2), 43 PS §781 (e) (2), which reads as follows:

"The department shall promptly notify each employer of his rate of contribution for the calendar year, determined as provided in this section. The determination of the department of the employer's rate of contribution shall become conclusive and binding upon the employer, unless within ninety days after the mailing of notice thereof to the employer's last known post office address the employer files an application for review, setting forth his reasons therefor: Provided, That if the department finds that because of an error of the department it has notified an employer that his rate of contribution is more than the rate to which he is entitled, the department shall, within one year from the date of such notice, adjust the rate of contribution. The department may, if it deems the reasons set forth by the employer insufficient to change the rate of contribution, deny the application, otherwise it shall grant the employer a fair hearing. The employer shall be promptly notified of the denial of his application or of the department's redetermination, both of which shall become final and conclusive within thirty days after the mailing of notice thereof to the employer's last known post office address, unless the employer shall appeal by petition from the action of the depart-

ment to the Court of Common Pleas of Dauphin County within such time."

It will be observed that this section deals with rates, not with payments. In the first instance, the rate fixed becomes "conclusive and binding," unless the employer within 90 days applies for review. Should there be a review, the disposition thereof becomes binding in 30 days unless appealed. As far as the years 1953 and 1954 are concerned, there was no request for review in 90 days and consequently the appeal provisions are inapplicable.

There is one proviso in this section which is not dependent upon the taxpayer. The department may, within one year of notice of the rate, reduce an excessive rate if such be due to an error of the department. Under this proviso, the department did reduce the rate in 1955, when the error was discovered.

It follows from what we have said that a rate once set, though in error, is binding unless redressed within the times and in the manner stated.

This brings us to the question of refunds. Section 311 of the Act, 43 PS §791, provides as follows:

"If any individual or organization shall make application for a refund or credit of any amount paid as contribution, interest or penalties, under this act, and the department shall determine that such amount, or any portion thereof, was erroneously collected, the department may at its discretion either allow a credit therefor, without interest, in connection with subsequent contribution payments or shall refund from the Unemployment Compensation Fund, without interest, the amount erroneously paid: Provided, That an amount equal to any refund or credit of interest and penalties allowed, as provided herein, shall be transferred from the Special Administration Fund to the Unemployment Compensation Fund, irrespective of whether such interest or penalties were paid into

the Unemployment Compensation Fund or into the Special Administration Fund. No refund or credit shall be allowed with respect to a payment as contributions, interest or penalties, unless an application therefor shall be made on or before, whichever of the following dates shall be the later: (a) one year from the date on which such payment was made, or (b) four years from the reporting due date of the reporting period with respect to which such payment was made. For a like cause and within the same period, a refund may be so made or a credit allowed on the initiative of the department.

"An amount paid as contribution, interest or penalties shall not be deemed to have been erroneously collected within the meaning of this section if such amount was collected under and pursuant to a notice of contribution rate or a notice of assessment which, because of the applicant's failure to file a timely appeal therefrom, shall have become binding and final against the applicant under the provisions of this act."

It is obvious that this section relates primarily to payments and requests for refunds or credits. Such request, if proper, may be granted within the limitations of (a) and (b) which are not here questioned. But the concluding paragraph quoted above prohibits a refund based upon a rate which has become final and conclusive, as in the present case. When then could a refund be allowed? We think it clear that a refund could be allowed if the rate is admittedly correct but an overpayment was made due to a mathematical or typographical error, etc. Or, if the rate had not become binding and final and the rate was adjusted either by the department or by the court, a refund could be allowed, within the period of limitation prescribed by (a) and (b).

In both sections 301 and 311 the time limitations are designed to bring about a period of repose. They

thus bar claims of ancient vintage, whether as to rate or refund, but work no hardship to the zealous taxpayer.

It is our conclusion, therefore, that we may not order a refund in the present case because of the legal reasons we have given. We feel constrained, therefore, to sustain the preliminary objections and to dismiss the complaint.

### Decree

And now, to wit, April 8, 1957, the preliminary objections are sustained and the complaint dismissed at the cost of plaintiff.